UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

---

| | | |
|---|---|---|
| SABA HASHEM, Individually and Derivatively on behalf of D'ANGELO & HASHEM, LLC  Plaintiffs | } } } } | |
| | } | CIVIL ACTION NO: |
| v. | } } | 1:16-CV-12383-IT |
| STEPHEN L. D'ANGELO D'ANGELO LAW GROUP, LLC, and nominally, D'ANGELO & HASHEM, LLC  Defendants | } } } } } } | |

---

## DEFENDANTS' OBJECTION TO JENNIFER CARRION'S MOTION TO INTERVENE
### (Doc No. 26)

### I.   INTRODUCTION

This case presents a seemingly unprecedented situation where a lawyer, Mr. Hashem, who is currently suspended from the practice of law, is suing his former law firm, and said former law firm's only other principal and that principal's newly formed limited liability company, for: breach of fiduciary duty, an accounting, interference with contractual relations, and injunctive relief.  Mr. Hashem, in effect, seeks post-suspension distributions and profits that he is ethically and legally not entitled to, due to his conviction for assault and battery and strangulation, by trumping up breach of fiduciary duty claims.

As to each count, the Amended Complaint is devoid of enough factual detail to make an asserted claim plausible.  The averments are merely a recitation of some of the elements of the causes of action.

Moreover, Mr. Hashem has no standing to bring this lawsuit.  He is currently suspended from the practice of law, is a nonlawyer, and should

have disposed of his shares of D'Angelo & Hashem, LLC, upon his suspension pursuant to S.J.C. Rule 3.06(2)(a) and (b).[1]

## II.   BACKGROUND FACTS[2]

On January 12, 2000, Saba Hashem, Stephen D'Angelo, and C. William Hoilman formed D'Angelo, Hashem & Hoilman, LLC, and were managers and members.   Subsequently, Mr. Hoilman resigned his managerial power and membership, and the limited liability company changed its name to D'Angelo & Hashem, LLC ("D'Angelo & Hashem"). The firm became a two member LLC. Mr. Hashem and Mr. D'Angelo are equal members and managers of D'Angelo & Hashem.

On October 13, 2015, Mr. Hashem was arrested for assault and battery and strangulation of a woman he was having an extramarital affair with. The previous week, Mr. Hashem went to the victim's apartment, picked the victim up by the shoulders, pushed her down a nearby stairway, choked her on the ground with his hands around her neck, and spit in her face. After the victim returned to her apartment, Mr. Hashem again choked her and bit her upper lip.

Mr. D'Angelo did not know of the affair until after Mr. Hashem was arrested.   The next day, October 14, 2015, Mr. Hashem was ordered to

---

[1]    **(a)** All owners shall be persons who are duly licensed ... All owners shall be in good standing before this court …

**(b)** Any owner who ceases to be eligible to be an owner and the executor, administrator, or other legal representative of a deceased owner shall be required to dispose of his or her shares or other ownership interests as soon as reasonably possible either to the entity or to an individual or entity duly qualified to be an owner of the entity.

[2]    Most of the background facts are provided to the Court for context, as the Defendants' Amended Complaint is not well pleaded.   The Court does not have to rely on these facts when dismissing the Amended Complaint.

be held without bail after a dangerousness hearing.  Mr. Hashem could no longer serve his clients.  He ultimately was in jail for six months.

On November 24, 2015, Mr. Hashem admitted to sufficient facts in the Lawrence, Massachusetts District Court to one count of strangulation or suffocation, plead guilty to one count of assault and battery.  The strangulation count was continued without a finding until November 24, 2017.  On the second count, Mr. Hashem was sentenced to two and one half years in the house of correction, with six months to be served (receiving credit for 42 days already served).

An Order of Temporary Suspension was entered by the Supreme Judicial Court on December 29, 2015 (Spina, J.).  On July 27, 2016, a suspension for eighteen months was Ordered retroactive to December 29, 2015. See In Re: Saba B. Hashem No. BD-2015-114.

A suspended lawyer is a non-lawyer.  See Mass.R.Civ.P. 5.4; see also Office of Disciplinary Counsel v. Jackson, 637 A.2d 615 (PA 1994)(suspended or disbarred attorney is a "non-lawyer");Texas Professional Ethics Committee Opinion No. 592 (2010); Nebraska Ethics Advisory Opinion No. 11-01; Parquit Corp. v. Ross, 273 Or 900, 901, 543 P2d 1070 (1975)  (treating suspended lawyer as nonlawyer); OSB Formal Ethics Op No 2005-24; Office of Disciplinary Counsel v. McCord, 905 N.E.2d 1182, 1189 (Ohio 2009)(concluding lawyer's receipt of attorney fees while suspended from practice of law was improper and actionable as ethics violation).

Mr. Hashem has therefore been a non-lawyer since December 29, 2015.  During Mr. Hashem's incarceration, Mr. D'Angelo had to assume Mr. Hashem's files because of his incapacitation.  When Mr. Hashem was

suspended by the Supreme Judicial Court, Mr. D'Angelo had to comply with a myriad of ethical rules pursuant to the Massachusetts Rules of Professional Conduct and Supreme Judicial Court.

At all times up until the present, even though he probably shouldn't have, because he should have tendered his membership shares, Mr. Hashem has had access to D'Angelo & Hashem's federal, state, and local income tax returns, the balance sheets, and all information in G.L. c. 156, §9 (Records and documents of LLCs). At no time has Mr. Hashem ever demanded in writing an accounting for more information.

### III. MASSACHUSETTS PROFESSIONAL RULES OF CONDUCT AND SUPREME JUDICIAL COURT RULES

Mr. D'Angelo had to abide by a number of ethical rules in his conduct as manager of D'Angelo & Hashem during the incarceration and suspension of Mr. Hashem.

Upon Mr. Hashem's incarceration, Mr. D'Angelo had to take over working on his cases.

Then when Mr. Hashem was suspended, Mr. D'Angelo had to make available to all clients of D'Angelo & Hashem their files if they wanted to take them. S.J.C. Rule 4:01 §17(1)(e). Mr. D'Angelo had to create a new entity to practice law other than D'Angelo and Hashem because of the fact that Mr. Hashem was a manager and member of D'Angelo & Hashem Mass.R.Prof.C. 5.4(d), dictates:

> "A lawyer shall not practice with or in the form of a limited liability entity authorized to practice law for profit if: (1) a nonlawyer owns any interest therein; (2) a nonlawyer is an officer or corporate director or limited liability company manger thereof....".

S. J.C Rule 4:01, Bar Discipline, § 17(7) provides: "…no lawyer or law firm shall knowingly employ or otherwise engage directly or indirectly, in any capacity, a person who is suspended or disbarred by any court." S.J.C. Rule 3.06(2)(a) and (b) provider that only members of the bar in good standing may be a director or manager of a limited liability company, and that if one is suspended or disbarred that he/she is to dispose of their shares.

Mr. D'Angelo then properly formed D'Angelo Law Group, LLC.   When Mr. Hashem became suspended the contingent fee agreements with the clients signed by the firm became void.  A contingent fee agreement where the contingency has not yet occurred is voided by suspension or disbarment.[3,4] See Dorothy Anderson. Loss of License: Rules Governing Suspension or Disbarment, MA Assistant Bar Counsel (Feb. 2010), **Exhibit 1**, available at http://www.mass.gov/obcbbo/lossoflicense.htm citing Kourouvacilis v. American Federation of State, County and Municipal Employees, 65 Mass. App. Ct. 521, 532 (2006).[5] Each client was ethically

---

[3]     The suspended or disbarred lawyer is able to collect in quantum *meruit* for legal services provided before the suspension.  Mr. Hashem has not made such a claim in this case.

[4]     It is troubling that the Defendants aver that "Each [member] is entitled to an equal share of the profits and losses of [D'Angelo & Hashem]." Amended Complaint, ¶ 8. Mr. Hashem cannot receive a distribution during his suspension.  Once again, he could only receive quantum *meruit* on cases he had done work on prior to this suspension. Mr. Hashem. was supposed to dispose of his share upon his suspension.

[5]     Mr. Hashem is effectively arguing that he has been suspended from law for eighteen months, that he needs to withdraw from all cases in litigation, and with whom the firm has a contingent fee agreement, but he gets those clients back when he returns from his suspension. Or he's arguing, that he is forced to withdraw, but that he gets all the profits from all the cases, anyway. The argument is unethical and rewards Mr. Hashem for going to jail and having his license suspended for 18 months. He does not have to work, but he still gets the profits!  This is prohibited:

        Q. I have been suspended for only [eighteen] months. Can I
        hand my entire practice over to another lawyer while I am
        suspended, with the understanding that I will take all of the
        clients back when I am reinstated?

given the choice of retaining new counsel, or signing a new contingent fee agreement with D'Angelo Law Group, LLC. Mr. D'Angelo did not solicit those clients or do anything untoward. Mr. D'Angelo made Mr. Hashem aware of all this information when he met with him in jail on numerous occasions, providing Mr. Hashem paperwork to sign to withdraw his appearance in all cases that were currently in suit.

## IV.   *Plaintiff's' Admissions and Abandonment of Certain Arguments Contained within their Objection to Defendants' Motion to Dismiss.*

1.    The Plaintiffs admit that upon his suspension, Mr. Hashem has no interest in D'Angelo & Hashem, LLC, pursuant to Supreme Judicial Court Rule 3.06.

2.    The Plaintiffs make no argument in their opposition that they have standing to bring their claims, *i.e.*, breach of fiduciary duty, tortious interference with contractual relations, accounting, and for an injunction. Judicial inquiry of the case should stop there, and the case should be dismissed with prejudice.

3.    The Plaintiffs make no substantive argument to support its claims for tortious interference with contractual relations and breach of fiduciary duty (whether it be self-dealing, usurping corporate opportunities, or competing with the corporation). The Plaintiffs have

---

A. No. You are required to withdraw from all representation upon your suspension and your clients have the right to select new counsel. If a client asks you for a recommendation, you may recommend an attorney competent to handle the case, and the client may accept or reject your recommendation. (You are not entitled to a referral fee in such circumstances.) You cannot inform your clients that a designated attorney will represent them during your absence, and that you will resume the representation upon your return.

See Dorothy Anderson. Loss of License: Rules Governing Suspension or Disbarment, MA Assistant Bar Counsel (Feb. 2010)

tacitly admitted that Mr. D'Angelo was acting pursuant to the Massachusetts Rules of Professional Conduct and Supreme Judicial Court Rules in alerting the clients to Mr. Hashem's suspension, advising them they could seek other counsel, and having them elect who would represent them going forward.

## A.   *Plaintiff's' Claim for Accounting Fails*

4.   What the Court is left with, if it believes there is standing, is a claim for accounting.

5.   The Plaintiffs argue that Mr. Hashem satisfied Mass. R. Civ. P. 23.1 (or the analogous federal rule) because sending a written demand for accounting would have been futile (even though the futility argument has been eradicated).  The Plaintiffs never substantiates how such a demand would have been futile with any type of facts, rather they just making a conclusory allegation.

6.   Nor do the Plaintiffs argue and attempt to persuade this Court why the futility exception should apply to derivative suits filed on behalf of unincorporated associations such as LLCs, when the futility exception has been eradicated by statute for corporations and by caselaw for unincorporated associations. G.L. c. 156D, § 7.42, governing corporations inserted by St. 2003, c. 127, § 17;  Diamond v. Pappathanasi, 78 Mass. App. Ct. at 88 fn. 14 citing Stegall v. Ladner, 394 F. Supp. 2d 358, 367 (D. Mass. 2005) (applying statute to mutual funds); Halebian v. Berv, 457 Mass. 620, 623 n.4 (2010) (applying G. L. c. 156D, § 7.42, to business trusts based on the recognized similarities of corporations and business trusts).

7.    The Plaintiffs argue, on page 10, of its memorandum in support of its Objection to the Defendants' Motion to Dismiss, that "an accounting is necessary to wind up the affairs of the corporation."  The Plaintiffs have not averred in their Amended Complaint that D'Angelo & Hashem, LLC, has in any way dissolved for a winding up to occur.  That is because D'Angelo & Hashem, LLC, has not been dissolved pursuant to G.L. c. 156, § 43.

8.    Mr. Hashem's unclean hands prevent him from receiving an accounting in any event, as stated _infra_.

**B.**    _**The Caselaw Cited by the Defendants is Not Applicable**_

9.    The Plaintiffs cite Meehan v. Shaughnessy, 404 Mass. 419 (1989) in support of its argument to support a breach of fiduciary duty and that the clients are "assets."  It is beyond the pale.

10.    _Meehan_ involved a situation where several partners voluntarily decided to leave the law firm of Parker, Coulter, Daley & White, and take clients with them to their new law firm.  In that case, Leo Boyle and Jim Meehan did not become suspended by the Board of Bar overseers voiding their existing contingent fee agreements. Leo Boyle and Jim Meehan did not become suspended and must tender their partnership shares pursuant to Massachusetts Supreme Judicial Court Rule 3.06. Leo Boyle and Jim Meehan were not relegated to distribution of partnership shares that they received before a suspension and quantum meruit on other cases that they worked on.

11.    Parker Coulter was also not a two-member limited liability company, it was a large firm. In Meehan, the partnership had dissolved. In this case, there is no dissolution.

12.   In *Meehan*, the Court was deciding how monies were to be distributed to lawyers in good standing pursuant to a partnership agreement.  There is no partnership agreement here.

13.   Likewise, <u>Lyons v. Lyons</u>, 403 Mass. 1003 (1988) is unavailing. The Court determined that monies expected from a spouse's contingency fee agreement was part of the marital estate during a divorce.  In that case, the spouse lawyer had not been suspending voiding the contingency fee agreement.

## C.   *The Doctrine of Unclean Hands Bars All Claims*

14.   Massachusetts caselaw and the Board of Bar Overseers is quite clear that Mr. Hashem is entitled to his partnership distribution at the time he was suspended, and quantum meruit on cases that he worked on before the suspension.  He is entitled to nothing else.

15.   Mr. Hashem argues, however, that he is entitled to more.  He wants the Court to render him equitable relief, but his hands are unclean for such relief to be afforded (assuming Mr. Hashem has standing, which he does not, and has plead sufficiently on his claims, which he has not).

16.   "[E]quity will not interfere in behalf of one who is guilty of illegal or inequitable conduct in the matter with regard to which he seeks its action . . ."  <u>N.Y., N.H. & H.R. Co. v. Pierce Coach Lines</u>, 183 N.E.  836, 837 (Mass. 1933).

17.   In <u>Fidelity v. Ostrander</u>, 40 Mass. App. Ct. 195, 201-202 (1995), Fidelity filed a civil action to disgorge profits from its employee, Ostrander.  Ostrander had been criminally convicted of three counts of violating the Investment Company Act and SEC Rules.  The Court stated that Ostrander was barred from alleging equitable defenses that

Fidelity acquiesced and ratified her behavior. Here, Mr. Hashem should not be able to bring claims that sound in equity.

18. In <u>Our Lady of the Sea Corp., v. Borges</u>, 40 Mass.App.Ct. 484 (1996), Borges, a boat captain, breached his fiduciary duty to his partners by stealing a large portion of the fish catch, and appropriating it to himself. Borges counterclaimed for payment on promissory notes for loans he made to the corporation and was successful on that claim with the jury. The trial court, however, barred the claim. The Appeals Court reasoning that Borges's demand for payment was related to his misconduct. Borges obtained the money to make the loan to Our Lady of the Sea from another one of his corporations. Borges paid back the loan to the other corporation with fish money he stole from his Our Lady of the Sea partners. The Appeals Court did not definitively state the doctrine of unclean hands applied, but stated that it would be unjust enrichment for Borges to be able to offset the judgment for breach of fiduciary duty with the monies owed to him on the promissory note because he had stolen money from his partners.

19. The doctrine of unclean hands also bars an accounting in these circumstances. A partner must come to the court with clean hands for an accounting. <u>Griffin v. Cafarelli</u>, 38 A.D.2d 847, 330 N.Y.S.2d 110 (1972). A partner has unclean hands if he injures his partners by immoral, illegal, unconscionable, or fraudulent acts that are directly related to the subject matter of the suit. <u>National Distillers and Chem. Corp. v. Seyopp Corp.</u>, 17 N.Y.2d 12, 15-16, 267 N.Y.S.2d 193, 195, 214 N.E. 2d 361, 363 (1966). A partner acts unconscionably by committing willful acts that would be condemned and pronounced wrongful by honest

and fair-minded persons. <u>Pecorella v. Greater Buffalo Press Inc.</u>, 107 A.D.2d 1064, 1065, 486 N.Y.S.2d 562, 563 (1985) (mem.) citing 20 N.Y.Jur. Equity § 107.

20.  Mr. Hashem should not be rewarded in equity with money (above quantum meruit) for strangling and battering a woman and being criminally convicted, causing his suspension, and the ruin of his firm.

**V.   STANDARD OF REVIEW:   INTERVENTION UNDER FED. R. CIV. P. 24**

The parties agree on the applicable standard of review for Fed. R. Civ. P. 24(a)(2) motions.  As the Court stated in <u>Conservation Law Foundation of New England, Inc. et al v. Mosbacher</u>, 966 F.2d 39, 41 (1st Cir. 1992), "Rule 24(a)(2) allows intervention as of right if an applicant meets four conditions.  In <u>Travelers Indem. Co. v. Dingwell</u>, 884 F.2d 629, 637 (1st Cir.1989), we listed those requirements:

 1. The application must be timely (a factor not challenged here);

 2. The applicant must claim an interest relating to the property or transaction which is the subject of the action;

 3. Disposition of the action may, as a practical matter, impair or impede that applicant's ability to protect the interest; and

 4. The applicant must show that the interest will not be adequately represented by existing parties.

An 'applicant who fails to meet any one of these requirements cannot intervene.' *Id*".  To justify intervention as of right, interests must be "significantly protectable." <u>Donaldson v. United States</u>, 400 U.S. 517, 531, 91 S. Ct. 534, 542, 27 L.Ed.2d 580 (1971).

**1.   APPLICATION MUST BE TIMELY.**

The Defendants do not argue that Carrion's Motion to Intervene is

timely.

**2.    APPLICANT MUST CLAIM AN INTEREST RELATING TO THE PROPERTY OR TRANSACTION WHICH IS THE SUBJECT OF THE ACTION.**

"[T]he intervenor's claims must bear a 'sufficiently close relationship' to the dispute between the original litigants" and that "[t]he interest must be direct, not contingent." Conservation Law Foundation of New England, Inc. et al v. Mosbacher, 966 F.2d 39, 42 (1st Cir. 1992) quoting, Travelers Indem., 884 F.2d at 638.  In this case, the intervenor's claim does not bear a sufficiently close relationship to the dispute between the original litigants.  The intervenor is a judgment creditor or Mr. Hashem and D'Angelo & Hashem, LLC.  The intervenor has no claims against Stephen D'Angelo or the D'Angelo Law Group.  Unlike the litigants in *Conservation Law* and *Travelers Indemnity*, there is no issue involving public law disputes or federal regulatory programs at issue.

In *Travelers Indemnity*, the dispute was between private parties over contribution to abate a toxic waste hazard.  The applicant for intervention was an insurance carrier.  The Court held that because the insurance company had refused to extend coverage, its interest was only contingent and no direct interest was at stake.  See Travelers Indem., 884 F.2d at 638-39. The *Travelers Indem*. Court pointed out that state law would govern the coverage issue and that state courts were available to adjudicate that question.  Conservation Law Foundation of New England, Inc. et al v. Mosbacher, 966 F.2d 39, 42 (1st Cir. 1992).

Ms. Carrion's Motion to Intervene incorrectly states that, "Stephen D'Angelo ("D'Angelo"), has transferred substantial assets of D&H to

D'Angelo's new law firm of which he is the sole Manager, D'Angelo Law Group, without an accounting to Hashem, resulting in this litigation". See Carrion Motion to Intervene at P. 2.  It is also well-established that "one of the most usual procedural rules is that an intervenor is admitted to the proceeding as it stands, and in respect of the pending issues, but is not permitted to enlarge those issues or compel an alteration of the nature of the proceeding." Vinson v. Wash. Gas Light Co., 321 U.S. 489, 498 (1944); see also Equal Emp't Opportunity Comm'n v. Woodmen of the World Life Ins. Soc., 330 F. Supp. 2d 1049, 1055 (D. Neb. 2004) (holding that an intervenor could not assert a cross-claim that would "improperly expand the scope of the proceedings before this court"); Seminole Nation of Okla. v. Norton, 206 F.R.D. 1, 7 (D.D.C. 2001) (denying a potential intervenor's request to intervene and present claims that fell outside of the scope of the litigation); Marvel Entm't Grp., Inc. v. Hawaiian Triathlon Corp., 132 F.R.D. 143, 146 (S.D.N.Y. 1990) (stating that an intervenor may not assert additional claims that "needlessly expand the scope and costs of th[e] litigation and [] thus prejudice the rights of" the other parties to expeditiously resolve the action).  The Defendants in this case have a pending Motion to Dismiss the unsubstantiated claims alleged by the Plaintiffs; the would-be-intervenor's apparent attempt to inject fraudulent conveyance claims and expand upon those unsubstantiated allegations should not be countenanced.

It is axiomatic that a judgment creditor may not intervene in a case as a matter of right under Fed. R. Civ. P. 24.  See Chitty v. State Farm Mutual Automobile Insurance Co., 38 F.R.D. 37 (E.D.S.C. 1965)

(Action by estate of deceased insured against automobile liability insurer for negligence or bad faith in failure to settle tort claim within policy limits.  Held that tort judgment creditor had no interest in suit by estate, the judgment debtor, and would not be permitted to intervene therein, and allegation that estate had not alleged that it had paid excess over policy limits or was able to pay same were not valid defenses and were stricken); SEC v. Falor, 270 F.R.D. 372 (N.D. Ill. 2010) (would-be-intervenor's motion to intervene denied under Fed. R. Civ. P. 24(a)(2) because he only interest in the case is as a judgment creditor looking to collect her debt).  See also, Flying J, Inc. v. Van Hollen, 578 F.3d 569 (7th Cir.2009) explaining that, "the fact that you might anticipate a benefit from a judgment in favor of one of the parties to a lawsuit— *maybe you're a creditor of one of them* — does not entitle you to intervene in their suit." *Id.* At 571; United States v. Alisal Water Corp., 370 F.3d 915 (9th Cir.2004) (a judgment creditor of the defendant moved to intervene as of right in an environmental enforcement action that could have impaired the defendant's ability to pay the judgment creditor. 370 F.3d at 917. Determining that the judgment creditor did not have a sufficient interest to intervene, the Ninth Circuit stated that an " interest must be related to the underlying subject matter of the litigation." *Id.* at 920. The court held that a mere interest in the " prospective collectability of a debt" was, " several degrees removed from the public health and environmental policies that are the backbone of this litigation." *Id.* Concerned about creating an " open invitation" for creditors of a defendant to intervene in any lawsuit where damages might be awarded, the court concluded that " an

allegedly impaired ability to collect judgments arising from past claims does not, on its own, support a right to intervention." *Id;* Thompson v. United States*, 268 F.R.D. at 320 (After the government seized approximately $320,000 from defendant Thompson and Thompson pled guilty on drug conspiracy charges, potential intervenor Midwest Partners moved to intervene on the basis that it had an unsatisfied judgment against Thompson. Held that Midwest's interests did not satisfy Rule 24(a)(2) requirements for intervention because Midwest Partner's interests were only to " protect its ability to collect its debt" and it had no interests in the underlying legal issues or subject matter of the original dispute. *Id.* at 321-23.

**3.   DISPOSITION OF THE ACTION IMPAIRS OR IMPEDES THE APPLICANT'S ABILITY TO PROTECT THE INTEREST.**

Unlike the litigants in *Conservation Law* and *Travelers Indemnity,* the disposition of this action does not impair or impede its rights as a judgment creditor. In fact, Carrion has a pending Summary Process action against Mr. Hashem and D'Angelo & Hashem, LLC in Essex Superior Court.

The purported intervenor in *Conservation Law* (several private, commercial fishing groups) were concerned with certain federal regulations directly relating to their industry; they were concerned that they would be unable to adequately protect their interests (if not permitted to intervene) in a specific consent decree (by and between the Conservation Law Foundation, *et al* and the Secretary of Commerce). In that case, the plaintiffs alleged that the Secretary of Commerce had

inappropriately approved a fishery plan submitted under the provisions of the Magnuson Act, 16 U.S.C. §§ 1801-1882. The plaintiffs sought to have the Secretary develop a new plan that would prohibit overfishing off the coast of New England. The fishing groups submitted petitions for intervention but before the Court ruled on the motion to intervene, the plaintiffs and the Secretary of Commerce agreed upon the terms of a consent decree. The district court subsequently denied the fishing groups' requests for intervention and approved the consent decree. The fishing groups appealed the denial of their motions to intervene.

The facts in this case are far different than in *Conservation Law* and *Travelers Indemnity* because there is no third-party government agency (*Conservation Law)* action which would impair or impede Carrion form protecting her state court judgment. And, as the would-be-intervenor in *Travelers Indemnity*, Ms. Carrion's interest in this case is contingent, not direct.

**4.   APPLICANT MUST SHOW INTEREST WILL NOT BE ADEQUATELY REPRESENTED BY (EXISTENT) PARTIES IN THE CASE.**

Similarly, as the *Conservation Law v. Mosbacher Court discussed,* in Moosehead Sanitary Dist. v. S.G. Phillips Corp., 610 F.2d 49 (1ˢᵗ Cir. 1979), the State of Maine's limited interest in its potential contribution to a sewage plant construction project did not justify intervention because Maine was adequately represented by the existing plaintiff.

In this case, Ms. Carrion's interests are adequately protected by the litigants and this Court, her status as a judgment creditor is not

advanced if allowed to intervene and she has not shown, because she cannot show, that her interests will not be adequately protected; none of the parties in this case dispute that she is a judgment creditor of Mr. Hashem and D'Angelo & Hashem, LLC.


                              Respectfully submitted,
                              Stephen L. D'Angelo
                              D'Angelo Law Group, LLC
                              By their Attorneys,

Dated:      4-20-17          /s/  William J. Amann
                              William J. Amann, Esq.
                              MA BBO # 648511
                              Craig, Deachman & Amann, PLLC
                              1662 Elm St., #100
                              Manchester, NH 03101
                              603-665-9111
                              wamann@cda-law.com


                    CERTIFICATE OF SERVICE

     On this date, I caused a copy of the forgoing pleading to be served *via* CM/ECF upon all registered users in the above-captioned case.

DATE:  4-20-17                /s/ William J. Amann