UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| SABA HASHEM, Individually and Derivatively on behalf of D'ANGELO & HASHEM, LLC <br> Plaintiffs <br><br> v. <br><br> STEPHEN L. D'ANGELO D'ANGELO LAW GROUP, LLC, and nominally, D'ANGELO & HASHEM, LLC <br> Defendants | CIVIL ACTION NO: <br> 1:16-CV-12383-IT |

## ANSWER TO SECOND AMENDED COMPLAINT

The Defendants, Stephen L. D'Angelo, D'Angelo Law Group, LLC, and D'Angelo & Hashem, LLC (collectively hereafter "Defendants") hereby answer the Second Amended Complaint filed by Saba Hashem, individually and as a member of D'Angelo & Hashem, LLC (hereafter "Hashem") against D'Angelo & Hashem, LLC (hereafter "D&H"), D'Angelo Law Group, LLC (hereafter "DLG"), and Stephen L. D'Angelo (hereafter "D'Angelo"). The Defendants answer as follows:

1.     Defendants are without specific knowledge to either admit or deny the allegations in this paragraph.

2.     Denied. D'Angelo is a resident of the State of New Hampshire, not Massachusetts.

3.     Admitted.

4.     Admitted as to D'Angelo's status as an attorney. Upon information and belief, Hashem is still suspended from the practice of law as of the date of this answer.

5.     Defendants are without specific knowledge to either admit or deny the allegations in this paragraph.

6.     Admitted as to the formation of D&H. Denied as to all other allegations in this paragraph.

7.     Admitted that Hashem and D'Angelo are both members of D&H. Denied as to all other allegations in this paragraph.

8.     This paragraph contains conclusions of law to which no response is required. To the extent any response is required, the Defendants deny.

9.     No response is needed.

10.    Admitted.

11.    Admitted.

12.    Admitted.

13.    Admitted.

14.    Admitted.

15.    Admitted.

16.    Admitted. The Defendants further answer that D&H could no longer represent its clients, at the latest, when Hashem was suspended from the practice of law, if not earlier.

17.    Denied.

18.    Denied.

19.    Admitted that no offer was made to other firms to take over representation of D&H's clients. Denied that Hashem was entitled to 50% of the interest in D&H at the time of his suspension.

20.    Denied.

21.    Admitted that D'Angelo and DLG paid no compensation to D&H. Denied that D'Angelo and DLG had an "obligation" to compensate D&H.

22.    Denied.

23.    Denied.

24.    Denied(?) – In light of the response to P25, perhaps this should be elaborated upon.

25.    Denied that D'Angelo and DLG do not "intend" to compensate Hashem. D'Angelo and DLG disagree with Hashem as to what he may be entitled to, if anything.

26.    Admitted.

27.    Admitted.

28.    Denied.

29.    Denied.

30.    Admitted that D&H had no operating agreement. The remainder of this paragraph contains statements of law to which no response is required. To the extent that an answer may be required, the Defendants deny.

31.    Admitted to the extent that an accounting would contain information that would establish the value of D&H's cases pending at a designated time, and D&H's liabilities. In so admitting, the Defendants expressly do not admit that all information and documents that may be

requested by Hashem in the course of seeking such an accounting are admissible, or that the Defendants are required to provide them.

32.    Admitted that Jennifer Carrion was a former employee of D&H and that she commenced an employment discrimination lawsuit. Denied as to all other allegations.

33.    Admitted.

34.    Admitted, however, the Defendants note that there are pending discovery requests submitted by Hashem that relate, in part, to information that would form the basis of an accounting, which the Defendants will answer in due course.

35.    Admitted, insofar as D'Angelo and Hashem were the only members of D&H until Hashem's suspension and resignation.

36.    Insofar as this paragraph contains statements of law and/or legal conclusions, no response is necessary. To the extent that a response is required, the Defendants deny.

37.    Insofar as this paragraph contains statements of law and/or legal conclusions, no response is necessary. To the extent that a response is required, the Defendants deny.

38.    Insofar as this paragraph contains statements of law and/or legal conclusions, no response is necessary. To the extent that a response is required, the Defendants deny.

39.    Insofar as this paragraph contains statements of law and/or legal conclusions, no response is necessary. To the extent that a response is required, the Defendants deny.

40.    No response is needed.

41.     No response is needed as this paragraph is a request for relief. To the extent a response is required, the Defendants deny.

42.     No response is needed.

43.     No response is needed as this paragraph is a request for relief. To the extent a response is required, the Defendants deny.

44.     No response is needed.

45.     No response is needed as this paragraph is a request for relief. To the extent a response is required, the Defendants deny.

46.     No response is needed.

47.     No response is needed as this paragraph is a request for relief. To the extent a response is required, the Defendants deny.

48.     No response is needed.

49.     No response is needed as this paragraph is a request for relief. To the extent a response is required, the Defendants deny

50.     No response is needed.

51.     No response is needed as this paragraph is a request for relief. To the extent a response is required, the Defendants deny.

## <u>AFFIRMATIVE DEFENSES</u>

### First Affirmative Defense

The Plaintiff has failed to state a claim against any of the Defendants upon which relief may be granted.

### Second Affirmative Defense

The Defendants' actions were not the direct cause of the Plaintiff's damages, if any.

### Third Affirmative Defense

The Defendants' actions were not the proximate cause of the Plaintiff's damages, if any.

### Fourth Affirmative Defense

If the Plaintiff ever had claims against the Defendants, which the Defendants expressly deny, the Plaintiff, by his actions or by those of his agents, has waived any rights to recover damages from the Defendants.

### Fifth Affirmative Defense

If the Plaintiff ever had claims against the Defendants, which the Defendants expressly deny, the Plaintiff, by his actions or by those of his agents, is estopped from recovering any damages from the Defendants.

### Sixth Affirmative Defense

If the Plaintiff ever had claims against the Defendants, which the Defendants expressly deny, the Plaintiff's claims are barred by the doctrine of laches.

### Seventh Affirmative Defense

If the Plaintiff ever had claims against the Defendants, which the Defendants expressly deny, the Plaintiff's claims are barred by the doctrine of unclean hands.

### Eighth Affirmative Defense

The Plaintiff, by his actions, has contributed to his alleged injury, and is therefore barred from recovery under G.L. c. 231 § 85.

### Ninth Affirmative Defense

The Plaintiff's negligence was greater than the alleged negligence of the Defendants and therefore damages, if any, recovered

by the Plaintiff from the Defendants should be reduced in proportion
to the Plaintiff's own negligence in accordance with G.L. c. 231 § 85.

### Tenth Affirmative Defense

If the Plaintiff ever had claims against the Defendants, which
the Defendants expressly deny, the Plaintiff's injury, if any, was as
a result of the Plaintiff's breach of duty to exercise the requisite
degree of care to protect and insure the Plaintiff's own interest and
safety.

### Eleventh Affirmative Defense

The action filed by the Plaintiff is frivolous, wholly
unsubstantial, and not advanced in good faith, and, therefore, the
Defendants are entitled to recovery of all costs, expenses, and
attorney's fees associated with the defense of this action.

### Twelfth Affirmative Defense

If the Plaintiff ever had claims against the Defendants, which
the Defendants expressly deny, the Plaintiff is not entitled to
recover from the Defendants because of his failure to mitigate his
damages.

### Thirteenth Affirmative Defense

If the Plaintiff ever had claims against the Defendants, which
the Defendants expressly deny, the Plaintiff, through his actions, has
ratified the Defendants' creation of DLG and the transfer of cases
from D&H to DLG.

### Fourteenth Affirmative Defense

If the Plaintiff ever had claims against the Defendants, which
the Defendants expressly deny, the Plaintiff's damages were caused

solely by the Plaintiff's own outrageous and reckless conduct which resulted in his arrest and conviction for assault, and subsequent suspension from the practice of law.

### Fifteenth Affirmative Defense

If the Plaintiff ever had claims against the Defendants, which the Defendants expressly deny, the Plaintiff's damages were caused solely by the Plaintiff's own breach of his fiduciary duty to the Defendants.

### Sixteenth Affirmative Defense

To the extent that the Plaintiff has alleged that the Defendants have committed fraud, the Plaintiff has failed to plead those allegations with the requisite particularity as to the circumstances constituting fraud as required by Fed.R.Civ.P. Rule 9, and any such allegations and related counts should be stricken from the Complaint.

WHEREFORE, the Defendants pray that this Court deny the relief sought by the Plaintiff in his Complaint.

**THE DEFENDANTS DEMAND A JURY TRIAL ON ALL COUNTS SO TRIABLE**

### COUNTERCLAIMS

### Parties in Counterclaim

1.     Plaintiff-in-Counterclaim, Stephen L. D'Angelo (hereafter "D'Angelo"), is an individual and a resident of Chester, Rockingham County, New Hampshire.

2.      Plaintiff-in-Counterclaim, D'Angelo Law Group, LLC (hereafter "DLG"), is a Limited Liability Company organized under the laws of Massachusetts with a primary place of business in North Andover, Massachusetts.

3.      Plaintiff-in-Counterclaim, D'Angelo & Hashem (hereafter "D&H"), is a Limited Liability Company organized under the laws of Massachusetts.

4.      Defendant-in-Counterclaim, Saba Hashem (hereafter "Hashem"), is an individual who, upon information and belief, resides in Methuen, Massachusetts.

## Facts

5.      D'Angelo and Hashem formed D&H in 2000 for the purpose of operating a law office.

6.      During the time that D&H was operating, D'Angelo and Hashem were practicing attorneys and the only members and managers of D&H.

7.      During his tenure with D&H, Hashem demonstrated erratic and often abusive behavior to some of the staff.

8.      In 2011, Hashem fired a former employee, Jennifer Carrion (the Intervenor in this case), who later instituted an employment discrimination action against D&H and Hashem.

9.      Carrion obtained a judgment against Hashem personally and vicariously against D&H as Hashem's actions were undertaken as a member of D&H.

10.      D'Angelo was not directly involved in Carrion's firing; was not a Defendant in Carrion's discrimination case; and does not have nor

has he ever had any personal liability to Carrion with respect to her termination.

11.    On or about October 11, 2015, Hashem was arrested for assault as a result of an attack on a former client with whom he was having an extramarital sexual relationship.

12.    A few days before his arrest, Hashem went to the victim's apartment and banged on the door demanding entry. When she opened the door, he picked her up by the shoulders, pushed her down a nearby stairway, choked her with his hands, and spit in her face. After the victim got up and went back to her apartment, Hashem followed her, choked her a second time, and bit her upper lip.

13.    From on or about October 11, 2015, Hashem remained incarcerated until his release on or about March 4, 2016.

14.    On November 24, 2015, Hashem admitted at a hearing in Lawrence District Court to one count of strangulation or suffocation in violation of G.L. c. 265, § 15D(b), and pleaded guilty to one count of assault and battery on a family/household member in violation of G.L. c. 265, § 13M(a).

15.    The strangulation count was continued without a finding for two years. On the second count, Hashem was sentenced to two and one-half years in a house of correction, with six months to be served.

16.    As a result of the criminal matter, Hashem was temporarily suspended from the practice of law by an Order of the Supreme Judicial Court dated December 29, 2015.

17.    After a formal bar disciplinary hearing, the Supreme Judicial Court suspended Hashem for eighteen months effective retroactively from December 29, 2015.

18.    Hashem's arrest and conviction, and his subsequent suspension were highly publicized online and in the media, including the Lawrence Eagle Tribune.

19.    After his arrest, and during the time Hashem was incarcerated, Hashem repeatedly stated to D'Angelo during D'Angelo's frequent trips to visit Hashem in jail that Hashem fully expected to be disbarred or suspended from the practice of law as a result of the criminal charges levied against him and his later conviction.

20.    As a result of Hashem's reckless and criminal behavior, and his subsequent suspension, D&H ceased to operate on October 31, 2015 and D'Angelo formed DLG at significant expense and effort on the part of D'Angelo.

21.    After Hashem's arrest but before his suspension, D'Angelo discussed with Hashem on several occasions the future of D&H, and particularly the need for D&H to cease operating as a result of the circumstances Hashem had created by his reckless and criminal conduct.

22.    Hashem agreed that D&H would need to be closed because of the near certainty that bar discipline would be levied against Hashem, most likely in the form of suspension or disbarment.

23.    After Hashem's arrest but before his suspension, D'Angelo also discussed with Hashem on several occasions his intention to create a new office, and in fact, Hashem helped choose the new name – D'Angelo

Law Group instead of D'Angelo & Associates as originally proposed by D'Angelo.

24.     In these discussions, D'Angelo and Hashem discussed the need to offer the option to D&H's then existing clients to either engage DLG or retain alternative counsel to which Hashem raised no objection.

25.     D'Angelo sent notices to all of D&H's then existing clients about D&H's closing and, in compliance with the applicable Massachusetts Rules of Professional Conduct, offered those clients the opportunity to engage DLG or seek alternative counsel.

26.     Most of D&H's then existing clients chose to engage DLG, but not all of them. Any clients who chose to transfer to DLG signed new engagement letters with DLG.

27.     After D&H became defunct, D'Angelo personally continued to pay for D&H's expenses, including but not limited to loans, leases, and other office-related expenses.

## Count I

### Breach of Fiduciary Duty

28.     Plaintiffs-in-Counterclaim reallege paragraphs 1-27 as if fully set forth herein.

29.     As a result of his reckless and criminal actions which led to his suspension from the practice of law, Hashem has breached his fiduciary duty owed to D'Angelo and D&H by causing D&H to become defunct; damaging D&H's and D'Angelo's reputation in the community and in the eyes of its clients; the loss of some of D&H's then existing clients and the loss of any fees that may have been derived from those clients' cases; and actual pecuniary loss as a result of D'Angelo being forced

to pay personally for D&H's expenses; all of which have caused and will continue to cause injury and financial loss.

**Count II**

**Accounting**

30.   Plaintiffs-in-Counterclaim reallege paragraphs 1-29 as if fully set forth herein.

31.   D'Angelo and D&H are entitled to an accounting of the work Hashem has performed for D&H to which Hashem claims to be entitled to compensation in some form or another, and hereby request that Hashem be ordered to provide a detailed accounting of the work Hashem has performed for all cases pending at the time of his suspension on December 29, 2015.

WHEREFORE, the Plaintiffs-in-Counterclaim pray that this Court:

A.   Determine an amount of damages suffered by the Plaintiffs-in-Counterclaim as a result of Hashem's breach of fiduciary duty;

B.   Order Hashem to pay damages in an amount to be determined, or in the alternative, offset any damages, if any, that may be assessed against the Plaintiffs-in-Counterclaim by the same amount;

C.   Order Hashem to provide an accounting of all work he has performed for D&H until the time of his suspension on December 29, 2015 for any and all cases pending at the time of his suspension; and

D.   Grant such other relief as the Court deems necessary.

**THE PLAINTIFFS-IN COUNTERCLAIM DEMAND A JURY TRIAL ON ALL COUNTS SO TRIABLE**

Respectfully Submitted,
Stephen L. D'Angelo,
D'Angelo Law Group, LLC, and
D'Angelo & Hashem, LLC,

Dated:       9-15-17                /s/ William J. Amann, Esq.
                                    _____

                                    William J. Amann, Esq.
                                    MA BBO # 648511
                                    Craig, Deachman & Amann, PLLC
                                    1662 Elm St., #100
                                    Manchester, NH 03101
                                    603-665-9111
                                    wamann@cda-law.com

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served via
the Court's ECF filing system upon all counsel of record as of the
date indicated below.

Dated:       9-15-17                /s/ William J. Amann, Esq.
                                    _____