UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

————————————————————————

| | |
|---|---|
| SABA HASHEM, individually & as Manager of D'Angelo & Hashem, LLC, | ) ) |
| Plaintiff/Defendant-in-Counterclaim | ) |
| v. | ) ) |
| Stephen D'Angelo, individually and as a Manager of D'Angelo & Hashem, LLC, and D'Angelo Law Group; D'Angelo & Hashem, LLC; and D'Angelo Law Group, LLC. | ) ) ) ) |
| Defendants/Plaintiffs-in-Counterclaim | ) |

No. 1:16-cv-12383-IT

————————————————————————

| | |
|---|---|
| Jennifer M. Carrion, | ) |
| Intervention-Plaintiff, | ) ) |
| v. | ) ) |
| SABA HASHEM, STEPHEN D'ANGELO, D'ANGELO & HASHEM, LLC, D'ANGELO LAW GROUP, LLC. | ) ) ) |
| Intervention-Defendants, | ) |
| Reach and Apply Defendants | ) |

————————————————————————

## MEMORANDUM OF LAW IN SUPPORT OF INTERVENTION-PLAINTIFF'S EMERGENCY MOTION FOR ISSUANCE OF PRELIMINARY INJUNCTIONS AGAINST INTERVENTION DEFENDANTS/ REACH & APPLY DEFENDANTS STEPHEN D'ANGELO & D'ANGELO LAW GROUP LLC

NOW COMES the Intervention-Plaintiff, Jennifer M. Carrion ("Ms. Carrion" or

"Plaintiff"), in the above-captioned action, and who hereby submits her Memorandum in

Support of her Motion for Preliminary Injunction against Stephen D'Angelo and D'Angelo

Law Group, LLC ("DLG") in order to protect about $190,000.00 in cash, which could satisfy

Ms. Carrion's Executions against D'Angelo & Hashem, LLC ("D&H"), presently deposited in

DLG's, and/or Mr. D'Angelo's IOLTA or Mr. D'Angelo's accounts. Issuance of preliminary

injunction further allots pre-judgment security to Ms. Carrion's (without limitation)

1

expected judgments against Mr. D'Angelo and DLG, as Defendants and/or Reach & Apply

Defendants, and to otherwise maintain the *status quo* relating to the assets of the

Defendants and/or Reach & Apply Defendants, Mr, D'Angelo and DLG, who are holding

monies belonging to the partnership, D&H.

As Grounds Therefore, Ms. Jennifer M. Carrion avers: (1) that she has a high

likelihood of succeeding on the merits of her claims against Mr. D'Angelo and D'Angelo Law

Group LLC, as Defendants and/or Reach & Apply Defendants, (2) that the Defendants

and/or Reach & Apply Defendants, may, absent the requested Court's order, conceal assets

to avoid paying a judgment, (3) that Ms. Carrion, absent the requested Court's order, shall

be irreparably harmed by the Defendants because there may be no other means to remedy

her harms, (4) that the requested Court's order merely preserves the *status quo*, and (5)

that the requested Court's order must be allowed to achieve justice and compensate Ms.

Carrion's Executions, which have dishonestly gone unpaid.

Because the Defendants and/or Reach & Apply Defendants have no known liability

insurance available to satisfy a judgment, which Ms.  Carrion has a very reasonable

likelihood of obtaining, the Intervention-Plaintiff respectfully moves this Honorable Court

to GRANT a Preliminary Injunction against the Defendants and/or the Reach & Apply

Defendants, Mr. D'Angelo and DLG, by -

1. Enjoining DLG and/or Mr. D'Angelo from disbursing any potion of attorneys' fees due in settlement for Suffolk Superior Court #1484 CV 01440-G, <u>Maldonado et al. v. Toll Brothers</u> (Exhibit "A" –Sup.Ct. at # 72, Stip. Dismissal, Nov.5, 2018 annexed hereto),
2. Ordering Mr. D'Angelo & DLG to deposit in a separate interest-bearing account held by Ms. Carrion's undersigned Counsel, or this Court, the attorney's fees due in this matter estimated to be at least $190,000 presently, being 40% of the offered Judgment amount of $400,000.00 (Ex. B – Offer of Judgment, see also Exhibit C, Contingency Fee Agreement dated 01/06/2014, both annexed hereto);
3. Ordering that these attorney's fees remain in escrow in an interest-bearing account pending resolution by agreement, Summary Judgment, or trial on the merits of this action, and any other relief deemed fair and just.

# FACTUAL BACKGROUND

On July 28, 2017, Ms. Carrion was allowed to Intervene in this civil action as a creditor to the law firm D'Angelo & Hashem LLC and its 50% partner Saba Hashem.  Ms. Carrion holds Suffolk Superior Court Executions # 0784CV2073.  (Paper No. 48, Exs. A- E).  As of today, this Execution totals $580,285.55. (Ex. F).  On or about July 12, 2012, Suffolk Superior Court, after notice and hearing, ordered the

*"Defendants, their associates, their partners, members, employees, and agents are prohibited from: 1. Taking any unlawful action to hinder, or delay, or defraud the plaintiff from collecting the plaintiff's judgment in this action, 2. Transferring, alienating or encumbering any assets of the Defendants other than in the ordinary course of business."* (Ex. H, Suffolk Sup.Ct Docket at 54)

Notwithstanding this preliminary injunction, the law firm dissipated, hindered, and defrauded Ms. Carrion from collecting on her judgment.  By way of example, without limitation, on or about April 30, 2015, Mr. D'Angelo caused counsel to mislead Plaintiff asserting in letters attached as Exhibit "M": *"One of the principals of the firm, Stephen D'Angelo is pressuring me and very close to having me put the firm into a bankruptcy."* Exhibit "N" contains other letters from this counsel alleging that a workout would be necessary for D&H to avoid filing bankruptcy.

In reality, the partners paid themselves draws combined $632,364.00 in 2014 and $1,133,295.00 in 2015. (Exhibits G, O, P, Q, R, S, annexed). D&H Accountant, McCoy, testified that the 2015 Tax Returns show that the firm earned $1,702,364.00 in gross receipts and sales of which $1,133, 295.00 were paid combined to the partners as guaranteed payments (Ex. G, McCoy Dep. at 73:23-75:23).   Further, Mr. McCoy testified that Mr. Hashem received $560,176.00 in 2015 draws, while Mr. D'Angelo received $573,119.00 in 2015 draws.  (Ex. G McCoy Dep. at 75:8-23).

Annexed as Exhibit O are the General Ledgers for D&H in 2015, and its page 1 shows the 2015 draws paid to each partner or on their behalf totaling $1,133,295.00. (Ex. O & Ex. G, McAvoy Dep at 83:23 -88:20). Accountant McCoy testified about this Ledger, marked as Exhibit 17 of his deposition. Id.  The firm QuickBooks Ledger confirms that out of the Mr. Hashem's total $560,176.47 draws, $256,213.00 were paid to the IRS in Quarterlies & installment payments, $45,336.67 were paid to the Commonwealth, leaving the difference to Mr. Hashem of $258,626.80 paid to him.  (Ex. O at pg. 1).  Exhibit O also confirms that out of the Mr. D'Angelo's total $573,119.00 draws, $229,769.00 were paid to the IRS in Quarterlies & installment payments, $44,427.44 to the Commonwealth and leaving a difference paid to Mr. D'Angelo of $298,922.56.  (Exhibit O at pgs. 1-2, see also Ex. G, McCoy Dep at 83:23- 93:8).   These guaranteed payments to the partners was after D&H paid its own expenses, employees, and expenses. (Ex. P – Balance Sheet & Profit/ Loss part of Accountant's 2015 Tax Worksheets at pgs.1-5).

D&H 2014 General ledgers show (& 2014 tax returns confirm) that D&H made $1,245,738.00 in gross receipts or sales, of which their Accountant testified on July 24, 2018 that $632,364.00 were paid directly to the partners, or paid on the partner's behalf such as IRS, the Massachusetts DOR.  (Ex. G McCoy Dep. at 40:21-58:5, Ex. R & S).  Specifically, the relevant 2014 D&H General Ledger annexed as Exhibit Q at 71-72, shows that partner Hashem received 2014 draws totaling $316,627.00 and Mr. D'Angelo received $315,737.00 in 2014 draws.  (Ex. Q at 71-72, see also Ex. R, S).  Out of the 2014 draws paid to Mr. D'Angelo $ 138,088.97 was paid to the IRS on Mr. Angelo's behalf, leaving him with a balance of $177,648.03 paid directly to him.  (Ex. R Accountant Tax Worksheet 2014, Stephen D'Angelo at pgs. 3-4 a/k/a McCoy Ex. 12, see also Ex. G, McCoy Dep. at 49:3-16, 63:6-64:12).  Out of the 2014 draws paid to Mr. Hashem, $149,645.07 was paid to the IRS

on Mr. Hashem's behalf, leaving him with a balance of $166,981.93 paid directly to him. (Ex. S, Accountant Tax Worksheet 2014 for Saba Hashem at pgs. 8 & 10, [a/k/a McCoyDep.Ex. 8]; see also Ex. G, McCoy Dep. at 45:15-49:2).

As of March 1, 2015, Ms. Carrion's Executions totaled $382,145.95 before award of appellate court fees in or about April 1, 2015 (See Ex. F).   As of March 1, 2015, D&H had an ability to pay in full Ms. Carrion's Executions.  Instead Mr. D'Angelo – as shown by Exhibits M & N directly - chose to conceal their six figure salaries to Ms. Carrions' attorneys alleging to be filing bankruptcy.  Mr. D'Angelo also claims for D&H that he was unable to pay (Ex. U, D&H Dep. at 26:1-28:16), even claiming that he "*wouldn't be here if that was the case* [that he made $573,000].  I *would be suiting on a beach drinking Pina Coladas someplace.*" (Ex. U, D&H Dep. at 165:5-168:18).  The annexed Exhibits G, O, P, Q, R, S, (without limitations) show clear violations of the Superior Court injunction, together with dishonest fraudulent efforts to avoid a known liability by Mr. Hashem and Mr. D'Angelo, against whom injunction is sought.

Moreover, when Mr.  Hashem faced suspension from the practice of law in or about November 2015, Mr. D'Angelo did not wind up nor dissolve D&H to pay its liabilities, such as Ms. Carrion's executions. (Ex. G, McCoy Dep at 98:12-105:18; see also Ex. I, D'Angelo Dep. 07.25.2018, at 148:6-152:20, Ex. V.) Rather Mr. D'Angelo filed an annual report and tax return for D&H for FY 2015 in February 5, 2016, (Ex. I. D'Angelo Dep. at 110:12-21; Ex. G, McCoy Dep. at 98:12-105:18), but he filed no dissolution for D&H.  Mr. D'Angelo did not disclose to its accountants that Carrion's Executions were a liability to D&H.  (Ex. G, McCvoy Dep at 106:1-108:23, see also Ex. I, D'Angelo Dep at 157:3-159:11).  As Mr. D'Angelo testified, when Saba began having his problems, he made decision to form his own company, DLG; (Ex. I, D'Angelo Dep. at 29:2-30:1).

When Mr. Hashem faced incarceration, Mr. D'Angelo then contacted D&H clients about "continuing" with Mr. D'Angelo and his new firm, DLG. (e.g. Client Letter, 10.30.2015, annexed Ex J; See also Ex. I, D'Angelo Dep at 159:12 – 165:18). Without dissolving D&H, Mr. D'Angelo started DLG in November of 2015 with D&H employees, attorneys, equipment, same lease, location, same website, goodwill, clientele. (Ex. I, D'Angelo Dep At 43:17 – 44:22, 165: 8-18, 166: 17-18). As Exhibit J confirms, D&H clients were signing up with Mr. D'Angelo's new firm before DLG commenced its payroll in November of 2015 (Ex. T, DLG Dep. at 11:3-11). Mr. D'Angelo for DLG confirmed that DLG started with same office, employees, attorney contractor, like D&H. (Ex. T, DLG Dep. at 10:20- 19:13). Mr. D'Angelo for DLG even testified that it had no liability when it started, just lease, payroll, and now recently car leases. (Ex. T, DLG Dep. at 19:14-23:21).

Notwithstanding Mr. D'Angelo taking control of all D&H business, including clients, Mr. D'Angelo for D&H claims no payments to Ms. Carrion are made *"because D'Angelo & Hashem doesn't exist anymore to make any payments."* (Ex. U, D&H Dep. 56:2-23). Mr. D'Angelo further deposed under oath that D&H has no assets, because clients can walk way at any time and compensation occurs only upon settlement, not before (Ex. U at 57:1-61:2, see also Ex. I, D'Angelo Dep at 33:15-22, 34:16-20). Mr. D' Angelo testified that he made no effort to place value on the cases when giving clients the option to go with DLG or new attorney. (Ex. I, D'Angelo Dep. at 34:3-8). He also confirmed to have made no legal research at all. (Ex. I, D'Angelo Dep. at 34:9-12). Mr. D'Angelo admitted that he could have sent cases to third parties and obtained referrals (Ex. I, D'Angelo Dep. at 35:16-36:6). For example, he discussed a ski accident referral to Maureen Manning (Ex. I, D'Angelo Dep. at 36:7 – 37:9), which he later admits to be receiving a fee from the case (Ex. I, D'Angelo Dep. at 38:20- 39:15).

The funds sought to be set aside by this preliminary injunction involve one of these cases, for which D&H was retained in January 6, 2014 for representation relating to the personal injuries and losses sustained by Mr. Maldonado in December 30, 2013. (Ex. C, 01/06/2014 Cont. Fee Agmt.). D&H assisted Mr. Maldonado with both his worker's compensation case and his personal injury case since days after his loss. (Ex. A). Mr. Maldonado chose to "continue" as stated in the client choice letters with Mr. D'Angelo & DLG in or about October 30 2015. (Ex. J, CL Lttr). In or about January 6, 2017, DLG was paid 100% of the $120,000.00 in attorney's fees earned in this client's Workers Compensation lump sum agreement with no portion paid to D&H, not even expenses. (Ex. I, D'Angelo Dep at 21:3-23:17, 28:7-30:1) The funds sought to be escrowed by injunction stem from D&H's legal services provided to this client with his related third-party claims when working at the Toll Brother Development in Methuen, where he fell from a roof. (Ex. I, D'Angelo Dep. at 24:10-22, 25:15-27:10; Ex. A-C, Ex. D, McCoy at page 8).

Mr. D' Angelo and DLG have already received near (if not more than) a million dollars of attorney's fees from November 2015 through 2017 from D&H cases. (Ex. D at pages 1-2 at Ab. J, Aziz, page 4 under Dillon, at pages 6-7 under Highlands, at page 8 under Maldonado; Ex. I, D'Angelo Dep at 21:3-23:17, 28:7-30:1, & Ex. E). Exhibit D annexed hereto, entitled McCoy Dep. Exhibit 31, is *the IOLTA account from D'Angelo Law Group, and this is right up to current. This is '15, '16' '17 and I pulled this at Steve's office."* (Ex. G McCoy at 135:10-14). As one example, without limitation, DLG IOLTA lists annexed as Exhibit D shows at pages 6-7 DLG receiving the following attorney's fees from D&H cases relating to Highlands fire -on June 13, 2016: $16,320.00 (Iocco) + $ 74,320.00 (Picardi) + $13,120.00 (Varnes C) - $13.201.00 (Varnes R) + $55,063.00 (Est. F. Zizza) + $64,768.88 (M. Zizza) + $184,209.31 on July 28, 2017 (Gardner, Caissie, Felteau, Pulisciano ), all of which

totaled **$420,920.31** paid to DLG in 2016-17 by cases started by D&H in 2013.   Exhibit E

annexed further corroborates that Mr. Angelo enjoyed a 2016 W2 salary in the amount of

$366,365.19 (Ex. E).

## ARGUMENT

The Plaintiff request respectfully preliminary injunction pursuant to Fed. R. Civ. P.

Rule 65 (a)(1), enjoining Mr. D'Angelo and his new firm DLG, as Defendants and/or Reach

& Apply Defendants, from alienating, conveying, transferring or hypothecating or otherwise

disposing of any attorney's fees from D&H cases held by Mr. D'Angelo and DLG, pending

this action.  Specifically, Ms. Carrion moves this Court to issue preliminary injunction:

1. Enjoining DLG and/or Mr. D'Angelo from disbursing any potion of attorneys' fees due in settlement for Suffolk Superior Court #1484 CV 01440-G, <u>Maldonado et al. v. Toll Brothers</u> (Exhibit "A" –Sup.Ct. at # 72, Stip. Dismissal, Nov.5, 2018 annexed hereto),

2. Ordering Mr. D'Angelo & DLG to deposit in a separate interest-bearing account held by Ms. Carrion's undersigned Counsel, or this Court, the attorney's fees due in this matter estimated to be at least $190,000 presently, being 40% of the offered Judgment amount of $400,000.00 (Ex. B – Offer of Judgment, see also Exhibit C, Contingency Fee Agreement dated 01/06/2014, both annexed hereto);

3. Ordering that these attorney's fees remain in escrow in an interest-bearing account pending resolution by agreement, Summary Judgment, or trial on the merits of this action.

Plaintiff respectfully requests that she not be required to post bond in light of Mr.

D'Angelo's and DLG willful and egregious violations of law toward the Intervention-

Plaintiff.  Absent the Court's Preliminary Injunctions, the Plaintiff will suffer irreparable

harms and injuries.   In addition, Fed. R. Civ. P. 64 authorizes "the Court to grant 'every

remedy that, under the law of the state where the court is located, provides for a seizing of

person or property to secure satisfaction of the potential judgment.'" *Erkan v. New Eng.*

*Compounding Pharmacy Inc.*, No. CIV.A. 12-12052-FDS, 2012 WL 5896530, *1 (D.Mass.

Nov. 21, 2012) (quoting M*etro. Prop. & Cas. Ins., Co. v. Boston Reg. Physical Therapy, Inc.*, 550 F.Supp.2d 199, 201 (D.Mass. 2008)). Thus, this Court looks to Massachusetts law.

To obtain a preliminary injunction in Massachusetts, *"the moving party must show (1) a likelihood of success on the merits; (2) that irreparable harm will result from denial of the injunction; and, (3) that, in light of the plaintiff's likelihood of success on the merits, the risk of irreparable harm to the plaintiff outweighs the potential harm to the defendant in granting the injunction."* Velazquez v. Eye Health Asscs, 32 Mass.L.Rptr. 502 at *3 (2014) citing *Tri–Nel Management, Inc. v. Board of Health of Barnstable,* 433 Mass. 217, 219 (2001), citing *Packaging Industries Group, Inc. v. Cheney,* 380 Mass. 609, 617 (1980). Massachusetts Courts review that: *"What matters as to each party is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party's chance of success on the merits. Only when the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue."* Id.

At bar, the requested injunction seeks to protect attorney's fees of at least $190,000.00 presently in the hands of Mr. D'Angelo's and DLG accounts.   First, Exhibits D, G, I, U annexed show close to a million dollars of attorney's fees earned from D&H cases paid to D'Angelo and DLG accounts from November 1, 2015 through 2017, without any payment to Ms. Carrion's Executions, as creditor to D&H.  Secondly, Exhibits O, P, Q, R, S shows over millions of dollars in attorney's fees paid directly to D&H, Mr. D' Angelo, and Mr. Hashem from early 2014 through October of 2015 without a single payment made to Ms. Carrion's Executions, despite the Suffolk Superior Court Injunctions (Exhibit H)

Rather, Mr. D'Angelo and D&H feigned through Counsel Mestone to be filing bankruptcy to Ms. Carrion's prior counsels to hide their six figure incomes (Exhibits M & N).  Because Mr.  D'Angelo and Mr. Hashem have illegitimately avoided payment to Ms. Carrion, this Court in the interest of justice must issue preliminary injunction to protect

significant attorney's fees that can remedy part of Ms. Carrion's Executions. (See Exhibits

D, G, I, O, P, Q, R, S, T, U)

**A. Intervention-Plaintiff has a high likelihood of succeeding and obtaining Judgment against the Mr. D'Angelo and DLG for which reason this Court must ALLOW the Intervention-Plaintiff's Motion for Preliminary Injunction.**

1. Ms. Carrion can show DLG is a successor LLC to D&H under Massachusetts Successor Liability law & De Facto Merger Doctrine.

Massachusetts law holds that, *"Liabilities of selling predecessor corporation are not imposed on successor corporation that purchases its assets unless successor expressly or impliedly assumes liability of predecessor, transaction is de facto merger or consolidation, successor is mere continuation of predecessor, or transaction is fraudulent effort to avoid liabilities of predecessor."* Cargill, Inc. v. Beaver Coal & Oil Co., Inc., 424 Mass. 356, 359 (1997) 676 N.E.2d 815, 818 citing *Guzman v. MRM/Elgin,* 409 Mass. 563, 566, 567 N.E.2d 929 (1991). See *McCarthy v. Litton Indus., Inc.,* 410 Mass. 15, 21, 570 N.E.2d 1008 (1991); *Dayton v. Peck, Stow & Wilcox Co. (Pexto),* 739 F.2d 690, 692 (1st Cir.1984) (construing Massachusetts law); 15 W. Fletcher, Private Corporations § 7122, at 231 (rev.perm. ed.1990).   The Supreme Judicial Court in <u>Cargill Inc</u> has reviewed:

*"the factors that courts generally consider in determining whether to characterize an asset sale as a de facto merger are* ***\*360*** *whether (1) there is a continuation of the enterprise of the seller corporation so that there is continuity of management, personnel, physical location, assets, and general business operations; whether (2) there is a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation; whether (3) the seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible; and whether (4) the purchasing corporation assumes those obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation."* Cargill, Inc. v. Beaver Coal & Oil Co., Inc., 424 Mass. 356, 359-360 (1997) 676 N.E.2d 815, 818-819.  *In re Acushnet River & New Bedford Harbor Proceedings re Alleged PCB Pollution,* 712 F. Supp. 1010, 1015

(D.Mass.1989). See also 15 W. Fletcher, *supra* at § 7124.20, at 294. (*"No single factor is necessary or sufficient to establish a de facto merger.") Id.*

In these facts, the majority (if not all) of factors proving De Facto Merger and Successor liability between D&H and DLG.  First, it is undisputed that DLG is in the same law business as was D&H with same operational management, like in the <u>Cargill Inc.</u> case.  At bar, the facts show continuity of personnel and management, as Mr. D'Angelo testified for DLG this law firm LLC business started with same office lease, employees, attorney contractor as the D&H law firm. (Ex. T, DLG Dep. at 10:20- 19:13).

As to the second factor, there is a continuity of shareholder between D&H and DLG and that is Mr. D'Angelo's attorney license.    D&H and DLG clients continued with same trial lawyer and same Associate Attorneys Andrade & Sussman.  (Ex. U).  Moreover, as <u>Cargill Inc.</u> case affirms: "There is no requirement that there be complete shareholder identity between seller and buyer before corporate successor liability will attach under de facto merger doctrine." Cargill, Inc. v. Beaver Coal & Oil Co., Inc., 424 Mass. 356 (1997) **676 N.E.2d 815.**   In addition, there are continuity of obligations, as Mr. D'Angelo testified that he had to maintain D&H Line of Credit with Santander and car leases, after Mr. Hashem lost his attorney license. (Ex. I, D'Angelo Dep. at 118:18-121:6).   This is because Mr. D'Angelo did not wind up nor dissolve D&H to pay its liabilities, such as Ms. Carrion's executions. (Ex. G, McAvoy Dep at 98:12-105:18; see also Ex. I, D'Angelo Dep. 07.25.2018, at 148:6-152:20.)

2.   D&H's Failure to Dissolve constituted Violation of M.G.L.A. 156C § 46 to her detriment as creditor, which is the injustice the doctrine of successor liability is designed to avoid.

Mr. D'Angelo's failure to wind up/dissolve the LLC violated M.G.L.A. 156C § 43, 46 and harmed Ms. Carrion as creditor to D&H.  Such injustice relates to the 3rd factor justifying de factor merger doctrine for why DLG must be liable.  Supreme Judicial Court

Rule 3:06 requires Mr. Hashem to renounce his ownership of the professional LLC upon his attorney license suspension.   In fact, Mr. D'Angelo testified about the same advice he received from Jim Bolan that *"D'Angelo & Hashem just would not be able to function any further"* (Ex. I, D'Angelo Dep. 31: 13-22, 31:24-33:14).   Therefore, legal consent from all members existed to dissolve D&H under M.G.L.A. 156C § 43(3), which mandates that the limited liability company D&H *"is dissolved and its affairs shall be wound up."*   The statute, M.G.L.A. 156C § 43(3) triggers M.G.L.A. 156C § 46 to apply in these facts, since D&H has *"no operating agreement in place.*" (Exhibit W, Hashem Dep. 07.17.2018 at 13:12-14:7).  M.G.L.A. 156C § 46 requires the following upon dissolution -

*"(a) Upon the winding up of a limited liability company, the assets shall be distributed as follows: (1) to creditors, including members and managers who are creditors, to the extent otherwise permitted by law, in satisfaction of liabilities of the limited liability company, whether by payment or the making of reasonable provision for payment thereof, other than liabilities for which reasonable provision for payment has been made and liabilities for distributions to members under section thirty-one or section thirty-two;"*

D&H should have been dissolved to pay Ms. Carrion's Executions, because Mr. Hashem was obligated to renounce his ownership interest upon license suspension and Mr. D'Angelo had to comply with attorney rules.  Instead of wind-up and paying Ms. Carrion, on or about February 8, 2016, Mr. D'Angelo filed an annual report for D&H for 2015.  (Ex. V – 2015 Annual Report, 02.08.2016, Ex. I. D'Angelo Dep. at 110:12-21; Ex. G, McAvoy Dep. at 98:12-105:18).  At no point did Mr. D'Angelo or Mr. Hashem file a notice of dissolution, even though D&H could not legally function.  Exhibit L proves D&H was involuntary dissolved by the Commonwealth as of 06.30.2018 for D&H's failure to file annual reports after 3 FY years. (Ex. L).   Accountant McCoy testified that D&H did not file a final return, tax which must occur upon dissolution showing balance sheet going to zero.  (Ex. G, McCoy Dep. at 115: 21-118:23).   Mr. D'Angelo did not disclose to its accountants that Carrion's Executions were a liability to D&H.  (Ex. G, McAvoy Dep at 106:1-108:23, see also Ex. I, D'Angelo Dep

at 157:3-159:11). The doctrine of successor liability is equitable and designed to prevent harm to innocent creditors like Ms. Carrion in the facts. Like in <u>Cargill, Inc.</u> , *"That corporate entity of predecessor was not dissolved does not preclude finding of de facto merger for purposes of successor corporate liability."* Cargill, Inc. v. Beaver Coal & Oil Co., Inc., 424 Mass. 356 (1997) 676 N.E.2d 815.

At bar, the fact that Mr. D'Angelo did not dissolve D&H constitutes fraudulent efforts to avoid liabilities to Ms. Carrion, which is the fourth factor for finding de facto merger. Mr. D'Angelo's Failure to wind up D&H constitutes actions to hinder, delay and defraud Ms. Carrion's collection of her Executions, consistent with Mr. D'Angelo's efforts in Exhibits M & N. Moreover, Mr. D' Angelo testified that he made no effort to place value on the cases when giving clients the option to go with DLG or new attorney. (Ex. I, D'Angelo Dep. at 34:3-8). He also confirmed to have made no legal research at all. (Ex. I, D'Angelo Dep. at 34:9-12). Mr. D'Angelo admitted that he could have sent cases to third parties and obtained referrals (Ex. I, D'Angelo Dep. at 35:16-36:6). Critically, Mr. D'Angelo admitted that he did not look into what happens to D&H liabilities once the LLC stopped functioning. (Ex. I, D'Angelo Dep. at 165:8-18). Mr. D'Angelo misses the point when arguing that D&H bills fail unless personally guaranteed (Ex. I 43-44, 114-116:24), there must be dissolution or wind up to pay LLC creditors. (M.G.L.A. 156C § 43(3), 46.)

Finally, the <u>Cargill Inc.</u> holds that "When acquiring enterprise has assumed all benefits of and held itself out to world as same enterprise as its predecessor, tension between policy of fair remuneration of corporate creditors and strong interest in respecting corporate structures must be resolved in favor of innocent creditor, for purposes of acquiring enterprise's successor liability." Cargill, Inc. v. Beaver Coal & Oil Co., Inc., 424 Mass. 356 (1997) 676 N.E.2d 815. As the high court held in <u>Miliken & Co. v. Duro,</u> *"Notwithstanding*

*our respect for the integrity of corporate structures, we are troubled by the notion that by merely changing its form, without significantly changing its substance, a single corporation can wholly shed its debts to unsecured creditors, continue its business operations with an eye toward returning to profitability, and have no further obligation to pay such creditors. The application of principles of successor liability is designed to remedy this fundamental inequity as factual circumstances, such as presented here, dictate." Miliken & Co. v. Duro Textiles LLC,* 451 Mass.,547, 561, 887 N.E.2d at 258.

This public policy applies at bar to Ms. Carrion, for which reason preliminary injunction must issue. When you type "D'Angelo & Hashem, LLC" on the web browser or Google, the internet immediately takes you to D'Angelo Law Group LLC at same physical & web address. DLG started without debts and with clientele having six figure personal injury cases (Ex. T, DLG Dep. at 19:14-23:21; see also Ex. J, Ex. D). When Mr. Hashem faced incarceration, Mr. D'Angelo began contacting D&H clients about "continuing" with Mr. D'Angelo and his new firm, DLG. (e.g. Client Letter, 10.30.2015, annexed Ex J; See also Ex. I, D'Angelo Dep at 159:12 – 165:18). Without dissolving D&H, Mr. D'Angelo started DLG in November of 2015 with again D&H employees, attorneys, equipment, same lease, location, same website, goodwill, clientele. (Ex. I, D'Angelo Dep At 43:17 – 44:22, 165: 8-18, 166: 17-18). As Exhibit J confirms for Mr. Maldonado's case, D&H clients were signing up with Mr. D'Angelo's new firm before DLG commenced its payroll in November of 2015 (Ex. T, DLG Dep. at 11:3-11). The funds sought to be set aside by this preliminary injunction involve Mr. Maldonado's cases, for which D&H was retained in January 6, 2014 for representation relating to the personal injuries and losses he sustained in December 30, 2013. (Ex. C, 01/06/2014 Cont. Fee Agmt.). For all these reasons, Ms. Carrion has high likelihood on prevailing on the merits on successor liability against DLG & Mr. D'Angelo.

**B.** **Intervention-Plaintiff has high likelihood of proving that the Defendants willfully and in bad faith violated the Suffolk Superior Court Preliminary Injunction CA # 0784CV2073, for which reason this Court must ALLOW the Plaintiff's Motion for Preliminary Injunctions to enjoin & set aside in escrow Attorney's fees .**

Massachusetts Law required Mr. D'Angelo to not hinder, delay or defraud Ms Carrion from collecting her civil rights Judgment, and his failure to do so exposes them to contempt, attorneys' fees and costs.     Mr. D'Angelo willfully violated the Suffolk Superior Court Injunction, as shown by Exhibits M & N.   Exhibits E, O, P, Q, R, S, constitute multiple examples of his firm's ability to pay Ms. Carrion as he was directly being paid over six figures in draws after paying his taxes to federal and state governments.  His failure to pay Ms. Carrion as an attorney member manager of D&H violates the Superior Court's Injunction Order of July 17, 2012 imputing liability upon him personally.   For these efforts to defraud Ms. Carrion and Mr. D'Angelo's several contempt findings in this action, Injunction to set aside D&H attorneys fees om separate interest escrow must issue.

**C.** **Because Defendant Hashem assets are subject to divorce proceedings, potential tax liens and because the D&H law firm and Defendant Hashem are jointly and severally liable to Ms. Carrion's Executions, this Court must ALLOW the Plaintiff's Motion for Preliminary Injunctions to avoid irreparable harm to the Intervention-Plaintiff, allow her recovery, & maintain the *status quo.***

With the monies the Defendants failed to pay Ms. Carrion, Mr. D'Angelo paid himself a W2 salary of $366,365.19 just in 2016 (Ex. E), and his firm has received to date near (if not more than) a million dollars of legal fees from D&H cases (See Ex. D all cases having a date of loss before November 1, 2015 & Highlands).   There is no prejudice to Mr. D'Angelo or DLG since they both have been very well compensated by D&H cases.  (Ex. D, G, I). Therefore, injunction as requested must be ALLOWED by this Court, in addition to maintaining the *status quo.*

15

Pre-judgment security is particularly necessary in this case for two reasons. First, most of the fees stemming from D&H cases have been paid to DLG and/or Mr. D'Angelo (Ex. D). D&H is jointly & severally liable to Ms. Carrion's civil rights executions, which have dishonestly not been paid. Second, Mr. Hashem is subject to divorce proceedings, the automatic divorce restraining order since Fall of 2015, and a monthly $5000.00 child support order being paid from assets resulting in capital gain tax liability. (Divorce Docket annexed to Memo, Law as Ex. K).

The preliminary injunction being sought are attorney's fees available now that can be enjoined and held in a separate interest-bearing account pending resolution, summary judgment and/or trial. It is reasonably foreseeable, in light of all the Defendants' willful violations of laws, bad acts, and their failure to meet their other known obligations, that Mr. D'Angelo, DLG, D&H, Mr. Hashem will be unable to satisfy a judgment absent an injunction now.

For these reasons, injunction must be issued with D&H attorney's fees set aside in escrow to ensure Ms. Carrion's remedy. Justice requires the prejudgment security sought by the Plaintiff respectfully via order for preliminary injunctions against Mr. D'Angelo and DLG, as the Defendants and/or Reach & Apply Defendant.

For all these aforementioned reasons, the Plaintiff requests respectfully that the relief sought be GRANTED.

> Respectfully submitted,
> JENNIFER M CARRION,
> By her attorney,
>
> /s/ Mernaysa Rivera-Bujosa
> Mernaysa Rivera-Bujosa, Esq. (BBO #665965)
> Rivera-Bujosa Law, P.C.
> C-2 Shipway Place,
> Charlestown, MA 02129
> P: (617) 398-6728

F: (617) 389-6730
E: mernaysa@riverabujosalaw.com

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

I, Mernaysa Rivera-Bujosa, hereby certify that I conferred in good faith with Defendants in an attempt to resolve this matter before filing this motion.

/s/ Mernaysa Rivera-Bujosa

Mernaysa Rivera-Bujosa, Esq.

## CERTIFICATE OF SERVICE

I, Mernaysa Rivera-Bujosa, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

/s/ Mernaysa Rivera-Bujosa

Mernaysa Rivera-Bujosa, Esq.