UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SABA HASHEM, individually and as a member of, and derivatively on behalf of, D'Angelo and Hashem, LLC, <br><br> Plaintiff / Defendant-in-Counterclaim, <br><br> v. <br><br> STEPHEN D'ANGELO, individually and as a member of D'Angelo & Hashem, LLC, and D'Angelo Law Group; D'ANGELO LAW GROUP, LLC, and D'ANGELO AND HASHEM, LLC, <br><br> Defendants / Plaintiffs-in-Counterclaim <br><br> JENNIFER M. CARRION, <br><br> Intervention-Plaintiff, <br><br> v. <br><br> SABA HASHEM, STEPHEN D'ANGELO, D'ANGELO & HASHEM, LLC, D'ANGELO LAW GROUP, LLC, <br><br> Intervention-Defendants. | Civ. Action No. 16-cv-12383-IT |

MEMORANDUM AND ORDER

December 6, 2018

TALWANI, D.J.

I.  Introduction

The underlying civil action before the court is between two former law partners, Saba Hashem and Stephen D'Angelo, regarding, *inter alia*, the assets of their firm, D'Angelo and Hashem, LLC ("D&H"). On July 28, 2017, Intervention-Plaintiff Jennifer Carrion, who holds

judgments against Mr. Hashem and D&H, was allowed to intervene. Mem. & Order [#39]. Ms. Carrion has asserted claims against Mr. Hashem, Mr. D'Angelo, D&H, and D'Angelo Law Group, LLC ("D'Angelo Law") for fraudulent conveyances from D&H to D'Angelo and D'Angelo Law under theories of reach and apply and corporate successor liability. Intervenor's Cross-Compl. ¶¶ 27–46 [#48].

Before the court is Ms. Carrion's <u>Motion for Preliminary Injunctions Against Intervention-Defendants/Reach & Apply Defendants Steven D'Angelo and D'Angelo Law Group LLC</u> ("Mot. for PI") [#155]. In her motion, Ms. Carrion asks that the court enjoin Mr. D'Angelo and D'Angelo Law from disbursing any portion of attorney's fees and costs relating to a settlement in <u>Lopez-Maldonado et al. v. Toll Brothers Inc.</u>, Suffolk Superior Court Case No. 1484-CV-01440-G. Because Intervention-Plaintiff has shown a strong likelihood of success on the merits of her underlying claim, the motion is ALLOWED.

II. <u>Background</u>

In April 2015, Ms. Carrion obtained judgments against Mr. Hashem and D&H which she contends now amount to approximately $500,000. Intervenor's Cross-Compl. ¶¶ 10–18 [#48]; Intervenor's Cross-Compl. Ex. A [#48-1] (Execution as to Hashem); Ex. B (Execution as to D&H) [#48-2]; Ex. C [#48-3] (Execution as to Hashem and D&H, jointly and severally); Ex. D [#48-4] (Execution as to Hashem and D&H, jointly and severally); Ex. E [#48-5] (Execution as to Hashem and D&H, jointly and severally). Furthermore, the Suffolk Superior Court issued a post-judgment injunction ordering that Mr. Hashem and D&H not "[take any unlawful action to hinder, or delay, or defraud [Ms. Carrion] from collecting [Ms. Carrion's] judgment," and from "[t]ransferring, alienating or encumbering any assets of [Mr. Hashem and D&H] other than in the ordinary course of business." <u>Carrion v. Hashem et al</u>, No. 0784cv02073, Suffolk Sup. Ct.

docket no. 54.

In January 2014, Erodin Miasel Lopez-Maldonado retained D&H to represent him on a contingent fee basis for a workers' compensation and personal injury case for losses that Mr. Lopez-Maldonado sustained in December 2013. Mot for PI Ex. C (Contingency Fee Agreement) [#156-2]. D&H represented Mr. Lopez-Maldonado for both his workers' compensation filing and his personal injury case in Suffolk Superior Court. See Mot. for PI Ex. A (Lopez-Maldonado et al. v. Toll Brothers Inc., Suffolk Superior Court Case No. 1484-CV-01440-G, docket) [#156-2]); Mot. for PI Ex. E (D'Angelo Dep.) 21:13-22:24. The Contingent Fee Agreement signed by Mr. Lopez-Maldonado included the following provision:

> (7) If the [D&H] is discharged by the client prior to the conclusion of this representation, the [D&H] is entitled for its reasonable expenses and disbursements. Further, the [D&H] is to be compensated the fair value of the services rendered to the client up to the time of discharge, but the amount of the fee shall not be due to the [D&H] until the subject matter litigation is concluded . . .. If the [D&H] is discharged prior to the conclusion of the case/claim, the Client acknowledges a lien to the [D&H] on any settlement of this claim, judgment obtained in the court action and or award reached through a mediation or arbitration as a result of this case/claim. . . . The Client further authorizes any successor attorney . . . to pay directly to the [D&H] the sums owed to it for the value of their services rendered on the case and any costs expended.

Contingency Fee Agreement at 16 [#156-2].

In November 2015, after Mr. Hashem was arrested and ultimately incarcerated, Mr. D'Angelo formed D'Angelo Law, of which he is the sole manager and member. Second Am. Compl. ¶ 10 [#46]; D'Angelo Dep. 29:22-30:16. In July 2016, the Massachusetts Supreme Judicial Court ordered Mr. Hashem suspended from practicing law for eighteen months, retroactive to December 2015. Am. Compl. ¶ 5 [#13]; Second Am. Compl. ¶ 4 [#46]. For those D&H clients that chose to continue to be represented by Mr. D'Angelo, Mr. D'Angelo represented them through D'Angelo Law. Second Am. Compl. ¶ 19-20 [#46]; Def.'s Mem. in

3

Support of Mot. to Dismiss 2 [#8]; see also Mot. for PI Ex. J. (Client Letter). D'Angelo Law operated with the same employees that were working at D&H, remained in the same office as D&H, and hired the same legal contractor as D&H. Mot. for PI Ex. T (DLG Dep.) 10:20-19:13 [#156-6]. Mr. D'Angelo did not wind up or dissolve D&H to pay its liabilities, even though the partnership was no longer in business. Mot. for PI Ex. G (McCoy Dep.) 100:6–102:22 [#156-3]. Instead, Mr. D'Angelo maintains an open account consisting of very few assets for D&H. Id. at 103:18–105:2. Further, Mr. D'Angelo maintained D&H's line of credit with Santander Bank and car lease payments. D'Angelo Dep. 118:18–119:24.

In January 2017, D'Angelo Law was paid approximately $120,000 in attorney's fees earned in Mr. Lopez-Maldonado's workers' compensation case. D'Angelo Dep. 22:1-22:24. In October and November 2018, Mr. Lopez-Maldonado settled his Suffolk Superior Court personal injury case and the parties to that suit filed a stipulation of dismissal. Lopez-Maldonado et al. v. Toll Brothers Inc., Suffolk Superior Court Case No. 1484-CV-01440-G, docket nos. 71–72. At the hearing on this motion, counsel for Mr. D'Angelo and D'Angelo Law informed the court that D'Angelo Law received $192,750 in attorneys' fees and costs from the settlement of that personal injury case. No portion of those attorney's fees and costs have been paid to D&H or Mr. Hashem. D'Angelo Dep. 28:7-29:5.

An accounting provided to the court of D'Angelo Law's accounts as of December 1, 2018, shows that all money from the most recent settlement was paid out of D'Angelo Law's accounts within two weeks of deposit, with $38,800 paid directly to Mr. D'Angelo, $25,000 paid to an unidentified money market account, and $44,325 used to make credit card and car payments. Ms. Carrion has yet to receive any payment from D&H to satisfy the April 2015 judgment against it. Intervenor's Cross-Compl. ¶ 19 [#48].

4

III. Discussion

*A. Legal Standard*

A court may grant a preliminary injunction if the plaintiff shows: (a) a reasonable likelihood of success on the merits of her claim; (b) that the plaintiff will suffer irreparable injury if the injunctive relief is not granted; (c) that the injury the plaintiff will suffer in the absence of an injunction outweighs the injury to the defendant that will result from the injunction; and (d) that the injunction would not harm the public interest. E.g., Corporate Techs., Inc. v. Harnett, 731 F.3d 6, 9 (1st Cir. 2013) (citing Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir. 1996)). The first factor, the likelihood of success on the merits, "is the main bearing wall of the four-factor framework," Ross-Simons, 102 F.3d at 16 (citing Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993); Auburn News Co. v. Providence Journal Co., 659 F.2d 273, 277 (1st Cir. 1981)), but the moving party must generally demonstrate all four factors to obtain relief, see IKON Office Solutions, Inc. v. Belanger, 59 F. Supp. 2d 125, 128 (D. Mass. 1999) ("Failure to demonstrate all of the requirements proves fatal for a request for relief." (citing Mass. Coal. of Citizens with Disabilities v. Civil Def. Agency & Office of Emergency Preparedness, 649 F.2d 71, 74 (1st Cir. 1981))).

*B. Likelihood of Success on the Merits*

To satisfy the first factor, Ms. Carrion must show a reasonable likelihood of success on the merits of her underlying claims that Mr. D'Angelo and D'Angelo Law conveyed assets belonging to D&H without providing consideration of a reasonably equivalent value, and without paying the judgment owed to her. Intervenor's Cross-Compl. ¶¶ 27–34 [#48].

There is no dispute amongst the parties that Ms. Carrion has a monetary judgment against D&H. Mr. D'Angelo and D'Angelo Law's counsel acknowledged at the hearing on this motion

5

that after Mr. Hashem's legal troubles, and Mr. D'Angelo's formation of a new LLC, many of D&H's clients continued to be represented by Mr. D'Angelo and D'Angelo Law. Pursuant to the Contingent Fee Agreement, D&H is legally entitled to payment for work performed on cases for which D'Angelo Law ultimately collected attorneys' fees and costs. See Contingency Fee Agreement [#156-2]; D'Angelo Dep. 154:7-14. Further, although the record evidence shows that D'Angelo Law did in fact receive payments from cases originating in whole or in part from D&H, see Mot. for PI Ex. D (Customer Balance Details) at 1-2, 4, 6–8 [#156-2], no money received from such cases has been provided to D&H. D'Angelo Dep. 28:7-29:5.

As Mr. D'Angelo, as the sole member of D'Angelo Law, has refused to transfer to D&H moneys that it is owed, and Ms. Carrion has a legal claim to D&H's assets up to the amount due under her judgment plus appropriate interest, Ms. Carrion has shown a sufficiently reasonable likelihood of success that Mr. D'Angelo and D'Angelo Law have conveyed assets belonging to D&H to D'Angelo Law in order to render D&H insolvent and avoid payment of her judgment.

Ms. Carrion has further shown a reasonable likelihood success of her claim of successor liability. Under the de factor merger doctrine, some of the factors that the court looks to determine whether a corporation is a corporate successor of a previous corporation include: whether there is "a continuation of the enterprise of the seller corporation so that there is continuity of management, personnel, physical location, assets, and general business operations"; "whether . . . the seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible"; and "whether . . . the purchasing corporation assumes those obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation." Cargill, Inc. v. Beaver Coal & Oil, Inc., 424 Mass. 356, 360 (1997) (citing In re Acushnet River & New Bedford Harbor

6

Proceedings re Alleged PCB Pollution, 712 F. Supp. 1010, 1015 (D. Mass. 1989)). "No single factor is necessary or sufficient to establish a de facto merger." Id.

Here, the balance of the factors supports the conclusion that D'Angelo Law is the corporate successor of D&H. D'Angelo Law operates out of the same office, employs the majority of the same personnel, and uses the same contract attorney as D&H. DLG Dep. 10:20-19:13 [#156-6]. Further, while refusing to dissolve D&H, Mr. D'Angelo continued to represent D&H's clients at D'Angelo Law in the same fashion as he had been doing previously. While Mr. D'Angelo changed the name of the firm, D'Angelo Law operates for all intents and purposes as a continuation of D&H aside from the loss of a partner.

Given these similarities, Ms. Carrion has a high likelihood of succeeding in showing that D'Angelo Law is the corporate successor of D&H, and therefore must assume D&H's liabilities. See Cargill, 424 Mass. at 360 ("[T]he liabilities of a selling predecessor corporation are not imposed on the successor corporation . . . unless . . . the transaction is a de facto merger or consolidation, . . . the successor is a mere continuation of the predecessor, or . . . the transaction is a fraudulent effort to avoid the liabilities of the predecessor.").

### C. Intervention Plaintiff will suffer irreparable injury

"Only a viable threat of serious harm which cannot be undone authorizes exercise of a court's equitable power to enjoin before the merits are fully determined." Mass. Coalition of Citizens with Disabilities v. Civil Defense Agency, 649 F.2d 71, 74 (1st Cir. 1981). "A presently existing, actual threat must be shown." Id.

Mr. D'Angelo and D'Angelo Law contend that Intervention-Plaintiff's harm is not an immediate harm that can not be redressed absent Court interdiction. However, as has been displayed by the accounting provided by Defendants to the court, money received by D'Angelo

7

Law from previous D&H clients, at least some of which Ms. Carrion has a legally cognizable claim to, is being quickly dissipated by Mr. D'Angelo. No monies provided to Mr. D'Angelo or D'Angelo Law from these cases have been transferred into the account of D&H or used to pay Ms. Carrion's judgment. Despite the judgment against D&H, it appears from the record before the court that Mr. D'Angelo consistently ignored D&H's obligation towards Ms. Carrion, and instead has promptly disbursed all funds received.

Mr. D'Angelo and D'Angelo Law's prior actions provide the court compelling evidence that Ms. Carrion will suffer irreparable injury absent the court's intervention.

### D. *Balance of the harms*

As evidence of its harm, Mr. D'Angelo and D'Angelo Law state that a preliminary injunction would interfere in the continuing operation of D'Angelo Law and its ability to meet its regular payroll and operating expenses. However, as it did with the Temporary Restraining Order [#165], the court is able to tailor its injunction to allow for the continued operation and payment of necessary expenses of D'Angelo Law. Should any issues arise, Mr. D'Angelo and D'Angelo Law may bring the specific hardship to the court's attention.

### E. *Public Policy*

Finally, the court must weigh the public policy considerations at issue in this case. Mr. D'Angelo and D'Angelo Law assert that public policy supports "the traditional recognition of the corporate form and limited liability of same absent a showing of all 4 elements of the successor liability doctrine." Defs's Opp'n 10 [#168]. However, where the moving party has made a strong showing of a reasonable likelihood of success on her claim that the transaction leading to the new entity consisted of a de facto merger or a fraudulent transaction to avoid the

liabilities of its predecessor, the court finds the preservation of assets to potentially satisfy a civil rights judgment to be the more persuasive public policy.

Based on the foregoing, the court concludes that Ms. Carrion has met her burden to show that a preliminary injunction is warranted in this matter to avoid an otherwise irreparable harm. Accordingly, Defendants Stephen D'Angelo and D'Angelo Law Group, LLC are hereby ORDERED to:

1. Promptly provide Intervention-Plaintiff with an accounting relating to the settlement in <u>Lopez-Maldonado et al. v. Toll Brothers Inc.</u>, Suffolk Superior Court Case No. 1484-CV-01440-G, including the date of the settlement, the amount of the settlement, the amount of the settlement retained by D'Angelo Law as attorneys' fees or costs, how the amounts retained by D'Angelo Law Group, LLC, were disbursed, and the balance of the attorney's fees and costs still held by D'Angelo Law Group, LLC, and the amounts of the settlement paid to Mr. D'Angelo or for credit card accounts in his name.

2. Hold the balance of attorney's fees and costs from <u>Lopez-Maldonado et al. v. Toll Brothers Inc.</u>, Suffolk Superior Court Case No. 1484-CV-01440-G, in an escrow account.

3. Hold the balance of attorneys' fees and costs from all other cases that originated with D'Angelo & Hashem, LLC, still held by or received by D'Angelo Law Group, LLC, or Stephen D'Angelo while this injunction remains in effect, in an escrow account.

4. Defendants Stephen D'Angelo and D'Angelo Law Group, LLC, are enjoined, directly or indirectly, alone or in concert with others, effective immediately, from making any distributions of amounts from such escrow accounts or obtained from any cases originating from D'Angelo & Hashem, LLC, except that D'Angelo Law Group, LLC, maintains the right to pay normal and customary expenses occurred in the normal course

9

of business. Such expenses may not include distributions to Stephen D'Angelo, payments toward credit card balances, or for car leases.

The above restrictions shall remain in place pending further order of this court, or if the matter is remanded, of the Superior Court for the Commonwealth of Massachusetts.

This Order is subject to modification by order of the court upon motion by any party.

IT IS SO ORDERED.

Dated: December 6, 2018

_____
United States District Judge